RECEIVED
JUL 07 2015
PRO SE OFFICE

14cv871 VVP

Good morning Your Honor,

I am here trying to protect my father and myself against the allegations that Mr. Quiroz has made against us. They are untrue and I did my best, not being a lawyer, to hopefully prove our innocence and that Mr. Quiroz's allegations and testimony are untrue.

First, the part of Mr. Quiroz's allegations that my father, Luigi, was owner and boss was absolutely untrue. My father was never owner nor his boss. Mr. Quiroz came to me and my partner, Vincenzo Parascondola for a job.

Then, if my father and I were so bad, why would he follow us and ask to work with us again and again, over and over for 19 years? Why, as shown in the pictures enclosed (Exhibits A, B & C), would he come to the retirement dinner I have for my parents and not only sit and eat with us but take pictures with us? In these pictures you will also notice that his clothing was a mess, Mr. Quiroz was so intoxicated at the party that his pants and belt were open and his shirt was sticking out of his zipper.

The accusation of him not having access to his time cards is another false claim. He had to punch at the start and end of every one of his shifts and at the start and end of every lunch hour that he took. He was definitely able to calculate his hours. In Exhibits F through K, the Declarations from our employees, you will see that each employee stated they were paid, were required to punch in and out, were able to calculate their hours AND that there was a New York State wage and law poster next to the time clock, which Mr. Quiroz said there was no poster.

Mr. Quiroz also said that he showed up and hour before his start time – this was his own doing. We did not start baking until 9:00 AM and we were done baking at 5:00 PM. Except Sundays which was 9:00-4:00. He also had **NO** access to the building because he was **NOT** a key holder and did **NOT** even have the alarm code.

Being accused of firing him was another lie. In mid-December, he asked me for time off because of complications from his self-amputated toe. In mid-January, he stopped coming to work – he abandoned his job, this was not the time he requested because he asked for it but never followed through and scheduled the requested time, had never mentioned it again. Then in February we were served with this lawsuit.

In March, April and May he kept calling Jose and I to try and get his job back. He also told Jose to tell me for $5,000 and his job, he would stop the law suit.

Throughout the years we worked with and employed many people, why is it that Mr. Quiroz is the only one trying to make these claims? In the pictures, Exhibits A through E, you see our other employees happily taking pictures with us as well.

As you witnessed, we attempted to have Jose Polonia testify but because we did not have, nor could afford an interpreter and I was unable to question him in Spanish we could not continue with him.

His questions would have been:

- What is your name?
- How do you know my father, Luigi, and I?
- Have you ever worked for us?
- How long did you work for us?
- What were your job responsibilities?
- Have we ever not paid you?
- Were you always compensated for your time worked?
- How would you describe my father's Character?
- What about mine?
- How were we as employers?
- Do you know Silverio Quiroz? (Also known as Silvester)
- Was he an employee at Luigi's Dolceria?  Do you know for how long?
- How was his character, how was he as an employee?
- What were his job responsibilities?
- Were there times that he did not show up for work?
- Were there times that he show up to work and wasn't able to perform his job?
- Why? What would the reason or reasons be that he couldn't perform his job responsibilities?
- Was him drinking or being drunk any part of this?
- Did Silvester not showing up or not being able to perform his responsibilities affect you at work in any way?
- What is this a picture of?  (show Exhibit M-Silvester sleeping)
- Did this happen often? Would this sometimes happen because he would drink before and or during work?
- Please tell me how this affected you.
- Do you remember this night at Bocelli's ? What were we celebrating (show Exhibits A through E)
- Where was Silvester? Did he seem happy for everyone?
- Can you describe Silvester's behavior at the party?
- Was he drinking alcohol?
- Would you say he was drinking heavily and drunk?
- Did you drive him home that night?
- How was the car ride? How was his behavior in the car?  Did he get sick on the way home?

> ➢ Can you please tell me the conversation you had with Silvester when he asked you to join him and lie about my Father and I so you can sue us?
> ➢ Is it true from October to January you worked 6 days?
> ➢ Is it also true from January 2nd to October you worked 5 days?
> ➢ Is it true that Silvester asked you to lie with him to collect money from me?
> ➢ Is it true that Silvester or someone from his attorney's office offered you $300.00 to go against us and not show up and to be a witness for them and you can all "eat together"?

Your Honor, I have enclosed a notarized statement from Jose Polonia (Exhibit L) where he describes working for us, with Mr. Quiroz and his conversation with Mr. Quiroz when he was asked to lie about us so he can help Mr. Quiroz sue us.
I believe that this statement, as well as Mr. Polonia showing up for us and not for Mr. Quiroz only shows the bad character and intentions of Mr. Quiroz and the good character of my Father and I.  Mr. Polonia was a loyal employee and friend for all the years we have known him.  He did not agree with Mr. Quiroz and his actions there for he did not take his side or his bribe.

For the testimony of Peter Misseri, he stated he was delivering for us for 25-30 years and has known us for approximately 35 years (since I was a baby).  He delivers for approximately 90 bakeries.  When describing the character of my Father and I he stated that we were stand up people, never hurt anyone or any other business and that everyone always speaks very highly of us and that he has never heard anyone speak bad about us in all the years he has known us.  He went on to describe our relationships with our employees saying that we are very respectful to them and always willing to accommodate them in any way we can and how we even fed them many meals at work.

Mr. Misseri continued with is testimony stating that he knew Mr. Quiroz for approximately 19 years, has seen him at our bakery every week, has seen him drunk every single time.  He also stated that Mr. Quiroz has not always worked for us, he has seen him at about 8 other bakeries but has always come back to work for us.

Below please see the questions and answers from Mr. Quiroz's testimony:
> ➢ How long did you work for us?  19 years
> ➢ What were your job responsibilities? Cake decorating and cookie making
> ➢ Have we ever not paid you? No
> ➢ Were you always compensated for your time worked? Yes
> ➢ Did your position require a lot of standing? Yes
> ➢ Is it correct that you are diabetic? Yes
> ➢ When did you self-amputate your toe? Late October

- How did it affect you working at the bakery? Wasn't able to stand for long periods of time
- When did you stop showing up to work because of this new health issue? January 12th
- Can we agree that YOU STOPPED coming to work and were not fired? No, you fired me because I was old (this is a lie)
- Can we agree that YOU STOPPED coming to work possible because of several months of complications from your toe amputation wouldn't allow you to perform your job as you should? No, you told me I was too old and couldn't work anymore (again a lie, I had other, older people still working for me)
- Do you recall the conversation with me when you told me that after cutting off your toe you were going to need time off of work? Yes
- Do you remember the night at Bocelli?  Yes
- Do you remember what it was a celebration for? Yes your parents retirement
- Do you remember how happy you were for my parents and how you told them over and over that you were there for me (calling me Bambino) and how you were going to take care of me at the bakery? Yes, I said I was going to give you my heart but you fired me and didn't allow me to (lie once again)
- Can you describe your conversation with Jose Polonia, one morning on the way to work, about how you wanted him to join you in suing my father and I so you could both try and get money –claiming that we were terrible employers that didn't pay their employees properly? First Mr. Quiroz said yes then he said that he is an adult and doesn't have stupid conversations like this. (he contradicted himself here)
- Is it true that you asked for cash advances on a daily basis? Yes
- Also, is it true that on pay day we would always go over your hours together and together we would deduct all the advances that I gave you during the week? Yes (but Mr. Quiroz claims that he had no way to check his card –another lie)
- If we did not pay you why did you follow us to Staten Island? He said he needed to work
- Is it true that from October to January you worked Tuesday to Sunday? Yes then said No (You, your Honor, was confused yourself with his contradicting answer)
- And is it true that from January to October you worked 5 days a week? His answer Yes and then No again
- How many holidays did you not show up for on time or didn't show at all?  His answer was Never (once again a lie)
- How did you work the hours you claim if you were never there? Said he was there and there early…he felt that he should be compensated for the time he was waiting outside before the store opened and work actually began.

Your Honor, multiple times Mr. Quiroz lied and contradicted himself in his claim and testimony. This can only show you that Mr. Quiroz is being untruthful and trying to hurt my Father and I.

We had other witnesses but being that we are not attorneys and couldn't subpoena them to show up they were unable to get time off from work and or school to show up. There was one other Exhibit that I haven't mentioned yet, Exhibit M, this is a picture of Mr. Quiroz sleeping at work on a rack where we kept our boxes. This was a regular occurrence, that my employee, Alexa Colucci, happened to take a picture of one day.

This lawsuit has brought us many hardships including having to shut down the bakery. My father has been in this business since 1970 and built his business and relationships throughout the years both personally and professionally. After always being around Dad at work, I started working with my Dad (at Alba's Pastry Shoppe) at 11 years old and have the same relationships as he does. We opened Luigi's Dolceria in 2004 and I took over in 2012 looking forward to creating traditional Italian desserts and adding a modern twist to create but instead I had to lose everything-my business, an incredible amount of money and many relationships. I feel that whether we win the case or not I have already lost.

I hope, Your Honor, you can see through his false claims and end this in Our Favor. I hope and pray that Silverio loses this case and would have to pay me back a monetary amount but I am sure he does not have a penny to his name. To have him deported would be a nice punishment but he would probably only sneak back into the country like the first time he came here. Maybe he can be an example for other people with his intentions that you will not get away with making claims and accusations against innocent, hard-working people like my Father and I.

Thank you again for your time.

Sincerely,

Angelo Di Rosa
25310 Flying Ebony Lane
Wesley Chapel, Florida 33544
813-702-8597

Jose Polonia





 **Christine DiRosa**
October 7, 2013 near New York, NY

Good luck on your retirement!!! xoxo Concetta E
DiRosa Angelo M DiRosa Danny MacDonald — 
Jose Polonia

Unlike · Comment · Stop Notifications · Share

You, Lee Fiore Benbvegna, Dolores Agostinacci
Antonietta Parada and 9 others like this.

View 3 more comments

 **Angelo M DiRosa** Pu that was just for curre
employees... We are doing something for th
family in a few weeks...
October 3, 2013 at 10:26pm · Like

 **Di Ann** Congrats Luigi and Tina well deserv
October 5, 2013 at 11:33am · Unlike    2

 **Angelo M DiRosa** Just wanted to clear this
up.... a little retirement DINNER that I arrang
my parents and our staff
October 5, 2013 at 10:22am · Like

 Write a comment...

Jose Polonia


DEFENDANT'S
EXHIBIT
B





Christine DiRosa
October 7, 2013 near New York, NY

With Jose Polonia.

Like · Comment · Share

Jose Polonia and Leslie Reyes like this.

1 share

Write a comment...

Sponsored                                              Cre



Tastytab

Restaurant Tablets
www.tastytab.com
Improved table services 3 per person. e-order econ
starting at $25 only. Free 1 month trial!

Case 1:14-cv-00871-VVP   Document 41   Filed 07/07/15   Page 8 of 31 PageID #: 236







Jose Polonia
October 6, 2013

Like  Comment  Share

Write a comment...

Close Friends Suggestions



Christine DiRosa
Add

Sponsored



Restaurant Tablets
www.tastylab.com
Improve table turnover & per person average per...
starting at $25 /mo. Free 2 month trial!



Jose Polonia

Timeline   About   Photos   Friends 2 Mutual   More

## Photos

Photos of Jose   Albums



DEFENDANT'S
EXHIBIT



Christine DiRosa
October 3, 2013 near New York, NY

With Jose Polonia

Like   Comment   Share

Jose Polonia and 2 others like this.

1 share

Write a comment...

Sponsored                                    Cre

Tastytab

Restaurant Tablets
www.tastytab.com
Improve table turnover & per order Average spen...
starting at $25 mo., Free 1 Month trial!

Case 1:14-cv-00871-VVP   Document 41   Filed 07/07/15   Page 10 of 31 PageID #: 238



DEFENDANT'S
EXHIBIT
E





Concetta Buraglia DiRosa
October 7, 2013

Like · Comment · Share

Write a comment...

Close Friends Suggestions

Jillian Mendola
Add

Sponsored

Restaurant Tablets
www.tastytab.com
Improve table turnover & per person average spend
starting at $29/mo. Free 3 month trial!

Other Albums



DEFENDANT'S
EXHIBIT

## DECLARATION OF ARIEL CEBALLOS

STATE OF NEW YORK    )
                   ) ss.:
COUNTY OF RICHMOND  )

**ARIEL CEBALLOS,** being duly sworn states the following:

1. I am currently employed as a dishwasher by Luigi's Dolceria ("Luigi's"), located at **4060** Hylan Blvd, Staten Island, New York.

2. I have been employed by Luigi's since on or about March 13, 2014. I previously worked at Luigi's for a few weeks in 2010 and 2011 when I was on vacation from school.

3. Angelo Di Rosa ("Angelo") is my boss. During all of my periods of employment, Angelo hired me, set my pay rate, set my schedule, and is the person I inform if I have any issue or complaints at Luigi's. Angelo gives me my pay check and I have been paid for all the hours I worked.

4. In 2010 and 2011, I worked from Monday through Friday from 8 a.m. until 3 p.m.

5. Throughout my employment, I have been required to record my hours worked by punching in at the start of my shift and punching out at the end of my shift. I do not work prior to punching in or after punching out. As far as I know, all other employees do the same.

6. Additionally, I have seen a poster which has wage and hour laws on it at Luigi's next to the punch clock.

7. From the start of my employment, I have been provided with a pay stub which sets forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay,

weekly reported tips, and other legally permitted deductions with each of my paychecks. To my knowledge, all other employees receive a pay stub setting forth the same.

8.  During my employment in 2010 and 2011, I worked with Silverio Quiroz ("Quiroz"), a cake decorator/baker at Luigi's.

9.  During the time that I worked with Quiroz, Quiroz and I were scheduled to start our shift at the same time. However, I saw Quiroz on and off. Sometimes Quiroz did not show up to work because he drank a lot of alcohol.

10. On occasions when I stayed late until 5 p.m. or 6 p.m., I took the train home with Quiroz at the end of our shift.

11. During my employment neither Quiroz nor any other employee ever complained to me about their hours worked or wages earned.

12. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

13. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

14. I have received translation services to fully understand and acknowledge the terms of this declaration.

Ariel Ceballos




## DECLARATION OF ALEXA COLUCCI

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF RICHMOND   )

**ALEXA COLUCCI**, being duly sworn states the following:

1. I am currently employed as a counterperson by Luigi's Dolceria ("Luigi's"), located at 4060 Hylan Blvd, Staten Island, New York.

2. I have been employed by Luigi's since on or about May 4, 2011.

3. From the start of my employment until the Fall of 2012, I regularly worked the following schedule:

      a. Thursday from 3 p.m. until 8 p.m. (closing time),

      b. Friday and Saturday from 1 p.m. until 8 or 9 p.m. (closing time varied upon business during the summer from Mother's day until September) and

      c. Sunday from 8 a.m. until 2 p.m.

4. From the fall of 2012 until the fall of 2013 I regularly worked the following schedule:

      a. Tuesday from 3 p.m. until 8 p.m. (closing time),

      b. Friday and Saturday from 1 p.m. until 8 or 9 p.m. (closing time varied upon business during the summer from Mother's day until September), and

      c. Sunday from 8 a.m. until 2 p.m.

5. Thereafter, since the fall of 2013, I have worked Friday and Saturday from 1 p.m. until 8 p.m. (closing time) and on Sunday from 8 a.m. until 2 p.m.

6. Angelo Di Rosa ("Angelo") is my boss. Angelo hired me, set my pay rate, set my schedule, and is the person I inform if I have any issue or complaints at Luigi's.

7. Throughout my employment, I have been required to record my hours worked by punching in at the start of my shift and punching out at the end of my shift. I do not work prior to punching in or after punching out. As far as I know, all other employees do the same.

8. Additionally, I have seen a poster which has wage and hour laws on it at Luigi's next to the punch clock.

9. From the start of my employment, I have been provided with a pay stub which sets forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay, weekly reported tips, and other legally permitted deductions with each of my paychecks. In fact, I was paid for all the hours that I worked. To my knowledge, all other employees receive a pay stub setting forth the same.

10. During my employment, I worked with Silverio Quiroz ("Quiroz"), a cake decorator at Luigi's.

11. On Sundays, Quiroz often came in on 10 a.m., which was after his shift was supposed to start. On several occasions, Quiroz called into Luigi's that he would not be at work for his scheduled shift.

12. On days where I worked until closing time, Quiroz always left before me, usually around 5 p.m. or 6 p.m. However, during the weeks of Easter and Christmas Quiroz worked until closing.

13. In the last few months of his employment, Quiroz often did not come to work. If Quiroz was going to be late for work he would not call in to Luigi's, but would call in if he was going to miss an entire shift.

14. Throughout my employment, all employees of Luigi's, including Quiroz were entitled to and took a one (1) hour lunch break each day. Sometimes Quiroz took longer than one (1) hour for his lunch break. Most employees left Luigi's for their lunch break, but on some occasions certain employees would eat their lunch in Luigi's.

15. During my employment, I always witnessed Quiroz drinking alcohol during his shift. Often I was required to clean the back room at Luigi's and found several beer cans that had been hidden there.

16. On many occasions Quiroz would return from his lunch break intoxicated. On one occasion, a customer commented that they could tell that Quiroz was intoxicated, even though he was working.

17. During my employment neither Quiroz nor any other employee ever complained to me about their hours worked or wages earned.

18. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

19. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

_Alexa Colucci_

Alexa Colucci

# DECLARATION OF JOY WEBB



STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF RICHMOND  )

**JOY WEBB**, being duly sworn states the following:

1. I am currently employed as a sales girl by Luigi's Dolceria ("Luigi's"), located at 4060 Hylan Blvd, Staten Island, New York.

2. I have been employed by Luigi's since on or about October 21, 2011.

3. I regularly work on Thursdays and Fridays from 1 p.m. until 8 p.m. (closing time) and Saturday from 8 a.m. (opening time) until 2 p.m.

4. Angelo Di Rosa ("Angelo") is my boss. Angelo hired me, set my pay rate, set my schedule, and is the person I inform if I have any issue or complaints at Luigi's.

5. Throughout my employment at Luigi's, I have been required to record my hours worked by punching in at the start of my shift and punching out at the end of my shift. I do not work prior to punching in or after punching out. To the best of my knowledge, all other employees are required to record their time in the same manner.

6. Additionally, since my employment has commenced, there has always been a poster hanging next to the punch clock advising all employees of the federal and New York state wage and hour laws.

7. From the start of my employment, I have been provided with a pay stub which sets forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay,

weekly reported tips, and other legally permitted deductions with each of my paychecks. To my knowledge, all other employees receive a pay stub setting forth the same.

8. During my employment, I worked with Silverio Quiroz ("Quiroz"), a cake decorator at Luigi's.

9. On Thursdays and Fridays, Quiroz was already at Luigi's when I arrived for my shift, and finished his shift anywhere from 5 p.m. until 6 p.m., and sometimes earlier. On Saturdays, Quiroz usually arrived between 9 a.m. and 10 a.m., and remained at Luigi's once my shift ended.

10. Often times, Quiroz did not show up to work. When that happened, my sister Denise Webb and other employees helped make and decorate cakes in his place. There were certain times during my employment that Quiroz did not show up for a few shifts each week.

11. Throughout my employment, all employees of Luigi's, including Quiroz were entitled to and took a one (1) hour lunch break each day. Most employees left Luigi's for their lunch break, but on some occasions certain employees would eat their lunch in Luigi's.

12. Throughout my employment I witnessed Quiroz drinking alcohol during his working hours in Luigi's. Although Quiroz attempted to hide the fact that he was drinking, myself and other employees often found beer cans in different locations within Luigi's.

13. During my employment neither Quiroz nor any other employee ever complained to me about their hours worked or wages earned.

14. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

15. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

_____

Joy Webb

## DECLARATION OF JOSE POLONIA

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF RICHMOND )

**JOSE POLONIA,** being duly sworn states the following:

1. I am currently employed as a cake decorator by Luigi's Dolceria ("Luigi's"), located at 4060 Hylan Blvd, Staten Island, New York.

2. Originally, I was employed in Brooklyn at Alba, the predecessor bakery to Luigi's. I started at Alba in 1998. I was subsequently employed by Luigi's when Alba closed and Luigi's was opened for business in 2004.

3. Angelo Di Rosa ("Angelo") is my boss. When Luigi's was opened, Angelo hired me, set my pay rate, set my schedule, and is the person I inform if I have any issue or complaints at Luigi's. For some of my employment at Luigi's my direct supervisor on a daily basis was Vincenzo Parascondola. He supervised myself and other cake decorators until on or about September 2011.

4. I regularly work approximately twenty (20) hours per week. My schedule is as follows:

      a.   Wednesday - Sunday from 8 a.m. until 3:30 or 4 p.m. depending on business.

5. For about two weeks each year (usually around Christmas and Easter) I work approximately ten (10) extra hours per week. This extended schedule is approximately the same for all other employees.

6. Throughout my employment, I have been required to record my hours worked by punching in at the start of my shift and punching out at the end of my shift. I do not work prior to punching in or after punching out. As far as I know, all other employees do the same. Moreover, I have always been paid for all the hours that I work.

7. Additionally, I have seen a poster which has wage and hour laws on it at Luigi's next to the punch clock.

8. From the start of my employment, I have been provided with a pay stub which sets forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay, weekly reported tips, and other legally permitted deductions with each of my paychecks. To my knowledge, all other employees receive a pay stub setting forth the same.

9. Throughout my employment at Alba and Luigi's I worked with Silverio Quiroz ("Quiroz"). Quiroz commenced his employment at Luigi's approximately six (6) months after it opened for business.

10. Throughout Quiroz' employment we both scheduled to work the same shifts, except that Quiroz often came late or did not show up for work.

11. I regularly saw Quiroz punch in and out for work since our schedules were the same. Quiroz would punch in when he arrived for work, punch out when he left for lunch, punch in after lunch, and punch out when his shift was over.

12. Quiroz came late for his shift almost every day he was scheduled to work.

13. Several times each week, I travelled home after work with Quiroz and even drove Quiroz to work on the weekends. I was often late for my shift when I drove Quiroz because he was not ready when I arrived to pick him up.

14. Quiroz and myself were always entitled to and provided with one (1) hour each day for a lunch break. Quiroz often slept in Luigi's upon returning from his lunch break.

15. I regularly observed Quiroz drinking alcohol during his shift at Luigi's.

16. I also observed Quiroz obtained cash loans from Angelo on a regular basis, which I learned resulted in a reduction of his pay at the end of the week. Quiroz complained to me that

his pay was reduced at the end of the week even though he knew that he had been paid additional money earlier in that week. No other employee ever complained to me about the hours they worked or wages they received.

17. There were many occasions when Quiroz did not show up for his scheduled shift. During some weeks of his employment, Quiroz did not show up for up to four (4) scheduled shifts.

18. During his employment, approximately one (1) year ago, Quiroz once asked me to sue Luigi's and its owners since they do not pay. However, I told Quiroz that I would not join in a lawsuit with him.

19. I do not know the circumstances under which Quiroz' employment ended. However, Quiroz just stopped showing up to work after he injured his foot, which I observed was covered with gangrene.

20. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

21. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

22. I have received translation services to fully understand and acknowledge the terms of this declaration.

José Polonia



DEFENDANT'S
EXHIBIT
5

# DECLARATION OF BRANDON COLON

STATE OF NEW YORK      )
                             ) ss.:
COUNTY OF RICHMOND  )

**BRANDON COLON,** being duly sworn states the following:

1. I am currently employed as a delivery driver by Luigi's Dolceria ("Luigi's"), located at 4060 Hylan Blvd, Staten Island, New York.

2. I have been employed by Luigi's since on or about November 10, 2013.

3. I regularly work Thursday, Friday, Saturday and Sunday from 4 p.m. until 8 p.m. (approximately 24 or 25 hours per week). On any given day, I make approximately five (5) or six (6) deliveries. On some occasions when the store is busy, I help clean and carry ingredients and trays of baked items throughout Luigi's premises.

4. I was hired to work at Luigi's by Angelo Di Rosa. Once my employment commenced, my hours and pay rate were set by Angelo. I consider Angelo my boss and I speak with him if I have any complaints or issues.

5. Since I started my employment, I have been required to record my hours worked on Luigi's punch clock. There is a poster hanging next to the punch clock which shows the federal and New York state wage and hour laws.

6. Included with each paycheck I receive is a pay stub setting forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay, and other legally permitted deductions. To my knowledge, all other employees receive a pay stub setting forth the same.

7.  During my employment, I worked with Silverio Quiroz ("Quiroz"), a cake decorator at Luigi's.

8.  On several occasions I personally witnessed Quiroz drinking alcohol or taking a nap during his working hours, sometimes for ten (10) to fifteen (15) minutes at a time.

9.  During my employment, Quiroz never complained to me about their hours worked or wages earned.

10. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

11. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

Brandon Colon

## DECLARATION OF DENISE WEBB

STATE OF NEW YORK     )
                            ) ss.:
COUNTY OF RICHMOND  )

**DENISE WEBB,** being duly sworn states the following:

1.  I am currently employed as a sales girl and cake maker by Luigi's Dolceria ("Luigi's"), located at 4060 Hylan Blvd, Staten Island, New York.

2.  I have been employed by Luigi's since on or about December 1, 2012.

3.  I regularly work on Saturday from 8 a.m. (opening) until noon and Sunday from noon until 7 p.m. (closing). Earlier in my employment, I also worked on Thursdays from 3 p.m. until 8 p.m. (closing) for a few months.

4.  I was hired to work at Luigi's by Angelo Di Rosa. Moreover, Angelo set my hourly pay rate and schedule. If I have any problems or complaints at Luigi's, I report them to Angelo.

5.  Throughout my employment, Luigi's has maintained a policy that all employees are required to record their hours worked on a punch clock. I have recorded my hours worked by punching in at the start of my shift and punching out at the end of my shift. I do not work prior to punching in or after punching out.

6.  Additionally, since my employment has commenced, there has always been a poster hanging next to the punch clock advising all employees of the federal and New York state wage and hour laws.

7.  Each time I receive my pay check, I have been provided a pay stub which sets forth line items for my regular hours worked, overtime hours worked, regular pay, overtime pay, weekly

reported tips, and other legally permitted deductions. To my knowledge, all other employees receive a pay stub setting forth the same.

8. During my employment, I worked with Silverio Quiroz ("Quiroz"), a cake decorator at Luigi's.

9. On Thursdays, Quiroz was already at Luigi's when I arrived for my shift. During those shifts, Quiroz would make cooks and leave around 4:30 p.m. or 5 p.m. On Saturdays that I worked, Quiroz often arrived at or around 9:30 a.m. and worked until after my shift ended. On Sundays, Quiroz usually arrived before my shift started and always left before my shift had ended.

10. On many occasions, I had to help make and decorate cakes since Quiroz did not show up for his scheduled shift. There were several weeks during my employment that Quiroz did not show up for more than one (1) shift.

11. Throughout my employment, I was provided a one (1) hour lunch break. Additionally, all employees of Luigi's have all been entitled to and took a one (1) hour lunch break each day.

12. Throughout my employment, I witnessed Quiroz drinking alcohol during his working hours in Luigi's, although he attempted to hide the fact that he was drinking during work.

13. During my employment no employee has ever complained to me about their hours worked or wages earned.

14. Everything I have affirmed in this declaration is true to my best knowledge and/or belief and I state that I have agreed to provide this declaration as prepared by Luigi's or its attorneys of my own free will, without coercion of any kind and without compensation or promise of additional compensation.

15. I have been advised that I have the right to seek counsel of my own, independent attorney, and to have this declaration reviewed by my attorney or by some other representative.

Denise Webb



March 26, 2014

To whom it may concern:

I, Jose Polonia, have worked with the Di Rosa family for 16 years, first for Alba's and then for Luigi's Dolceria. Luigi, Concetta and Angelo Di Rosa have ALWAYS been exceptional employers. They have always treated me as if I were part of the family and have always compensated me for the time I have worked.

I have worked with Silverio Quiroz for years and at both of the locations and he was treated the same way that I was. We were never mistreated or overworked. Silverio has an alcohol problem and other health issues. There were many times that Silverio came to work drunk, got drunk on lunch and went back to work drunk or didn't show up to work at all, sometimes missing a few days in a row. In the middle to the end of 2013, he had an issue with his toes. He knew that soon (he was saying the end of January 2014) that he would no long be able to work.

On one Sunday, on our commute in my personal car, during this time period, Silverio asked me to lie with him to go against the Di Rosa family so we could sue them. He wanted me to say that we were mistreated and not paid/compensated properly for the amount time that we worked for them. I told him right then and there that I would not do that, the Di Rosa's are good people and have never treated us or any other employee like that. Soon after that Silverio stopped coming to work, he never called and never came back.

Now, he has called me several times so that I can to talk to Angelo so he can get his job back.


Sincerely,

Jose Polonia

Sworn to me before this
27th day of March, 2014

Diane Casella
Notary Public

DIANE CASELLA
Notary Public, State of New York
No. 43-4894879
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires May 11, 2015

**From:** Alexa Colucci <alexaacolucci@aol.com>
**To:** luigisdolceria <luigisdolceria@aol.com>
**Date:** Sat, Sep 6, 2014 3:42 pm
**Attachments:** IMG_3681.JPG (2986K)



1 Attached Images





DEFENDANT'S EXHIBIT
IV

| | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Jose | Off | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 8:00-4:00 |
| Silvestre | Off | Off | 9:00-6:00 | 9:00-6:00 | 9:00-6:00 | 9:00-6:00 | 8:00-4:00 |

EVERYONE MUST PUNCH IN & OUT FOR CIGARETTE BREAKS & LUNCH BREAKS

NO CELL PHONES WHILE AT WORK

Any Schedule Changes, Including Days Off, Have To Be Approved by Angelo

NO UNAPPROVED CHANGES ALLOWED

HOLIDAY & SUMMER HOURS WILL BE DIFFERENT

DEFENDANT'S EXHIBIT ___0___

|  | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Ariel | Off | Off | 8:30-5:00* | 8:30-5:00* | 8:00-5:00* | 8:00-5:00* | 8:00-2:00* |
| John | Off | Off | Off | 10:00-4:00 | 10:00-4:00 | 9:00-4:00 | 9:00-1:00 |
| Jose | Off | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-3:00 |
| Silvester | Off | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-5:00 | 9:00-3:00 |

