UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SILVERIO QUIROZ,

                      Plaintiff,                    **FINDINGS OF FACT AND**
                                                                  **CONCLUSIONS OF LAW**

       - v -

                                                                  14-CV-871 (VVP)

LUIGI'S DOLCERIA, INC., (d/b/a
LUIGI'S DOLCERIA), LUIGI DI ROSA
and ANGELO DI ROSA

                        Defendants.
------------------------------------------------------------x

        At a trial before the court held on June 22 and 23, 2015, the court received evidence concerning the plaintiff's claims in this action brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law (the "NYLL"). On the basis of that evidence, and the stipulations of fact to which the parties agreed, the court makes the findings of fact and reaches the conclusions of law set forth below.

### FINDINGS OF FACT

        1.        At all times relevant to this action Luigi's Dolceria was a bakery located at 4060 Hylan Boulevard, Staten Island, New York, owned by the defendant Luigi's Dolceria, Inc. Luigi's Dolceria made and sold baked goods and pastries to the public. Luigi's Dolceria, Inc. is a domestic corporation organized under the laws of the State of New York. At all relevant times, Luigi's Dolceria, Inc. enjoyed a gross volume of sales and business that exceeded $500,000 per year. The business used goods such as sugar and flour that moved in interstate commerce.

        2.        During the period from 2006 through the end of December 2013, the plaintiff Silverio Quiroz was employed as a cake decorator and cookie mixer at Luigi's Dolceria. He was hired by the defendant Luigi Di Rosa, who was a part owner of the business and who supervised most of the operations of the business until he retired in July 2011. He made hiring and firing decisions, determined the hours that the employees worked, and decided what duties they would perform. He also made the weekly wage and salary payments to the employees. Luigi Di Rosa was assisted in the business by his son, the defendant Angelo Di Rosa, who was also part owner of the business. Angelo Di Rosa had the authority to make decisions regarding hiring and firing, but did

not exercise control of the other employment-related aspects of the operation until after Luigi Di Rosa retired.

3. The evidence concerning the days and hours that Quiroz worked was quite muddled. The defendants produced no wage and hour records with respect to the plaintiff's employment, and the plaintiff's testimony on the issue was inconsistent.[1] There was no dispute in the evidence, however, that the plaintiff's hours varied depending on the time of year. There was also no dispute that in January, when business was slow, Quiroz worked five days per week from 8:00 a.m. to 5:00 p.m., for a 45-hour work week.

4. The evidence concerning the plaintiff's hours during the rest of the year was less clear. When the plaintiff was hired he was told that he would work six days a week from 8:00 a.m. to 5:00 p.m., for a total of 54 hours per week, and it appears that this was his normal work week during the months from February through September. When asked how many hours per week he worked on average during these months, however, Quiroz testified somewhat inconsistently that he averaged between 40 and 60 hours per week. As the defendants failed to produce any records concerning the plaintiff's actual hours, the court concludes, for the purpose of this opinion, that the plaintiff worked 54 hours per week during the months from February through September.

5. As for the plaintiff's hours during the months from October through December, the inconsistencies in the plaintiff's testimony are difficult to reconcile. On the one hand, he testified that he worked seven days a week from 6:00 a.m. to 10:00 p.m. during these months, which would mean he worked 112 hours per week. On the other hand, he also testified that he averaged 80 hours per week during this time frame. The latter testimony is more reliable for several reasons. The defendant Luigi Di Rosa testified that he personally opened the shop every morning at 8:00 a.m., making it impossible for the plaintiff to have begun work prior to that time. The plaintiff did not quarrel with that testimony. Di Rosa also testified that the shop closed at 8:00 p.m. during the

---

[1] If an employer has not maintained wage and hour records, an employee may prove his case by offering "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331-32 (S.D.N.Y. 2005) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)). It then falls to the employer to produce evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946). New York law takes a similar burden-shifting approach. *See* N.Y. Lab. Law § 196-a.

winter months, which means that the plaintiff could have worked at most a 12-hour day during that time. It is of course possible that there were some occasions when the plaintiff began work before 8:00 a.m. or worked until 10:00 p.m., but in view of his testimony that he averaged 80 hours per week, that could not have been the norm. Rather, the court concludes, for purposes of this opinion, that the plaintiff worked 80 hours per week during the months of October through December.

6. Quiroz always received a salary for his work, and the salary also changed depending on the time of year. In January, he received $600 per week. From February through September, he received $650 per week. From October through December, he received $675 per week. Quiroz never received any additional payment for overtime hours. Quiroz apparently routinely obtained cash advances and received the balance of his pay weekly in cash in an envelope that also contained a statement of the hours worked and the amount of payment enclosed. He did not receive any other statement or notice concerning his pay.

7. There apparently were times when Quiroz was late for work, and on some occasions he apparently did not appear for work at all. Although the defendants used a punch card system for keeping track of hours worked by their employees, they did not produce any timekeeping records related to the plaintiff, and the court therefore has no basis for determining how often the plaintiff was late or absent. Neither the plaintiff nor the defendants offered any evidence concerning whether or not the plaintiff ever took vacations from work. Nor was any evidence offered concerning holidays or other days when the business was closed.

8. The plaintiff filed this action on February 7, 2014 alleging that the defendants violated the FLSA and the NYLL by failing to pay premiums for the overtime hours he worked. He also alleges that the defendants violated the NYLL by failing to pay "spread of hours" compensation and by failing to provide the annual and weekly wage and hour notices required by the NYLL. He seeks to recover unpaid wages and applicable penalties, as well as liquidated damages, prejudgment interest, and attorneys' fees.

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction of this action with respect to the claims made by the plaintiff under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. The claims arising under New York law are so related to the claims under the FLSA that they form part of the same case or controversy, and thus fall under the supplemental jurisdiction of the court as defined in 28 U.S.C. § 1367(a).

2.      The statute of limitations for the plaintiff's claims under the FLSA is two years, but is extended to three years if the violation of the FLSA is willful.  29 U.S.C. § 255(a).  A violation is considered willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act.."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)) (internal quotations omitted).  It is the plaintiff's burden to prove willfulness.  *Id.*  The plaintiff has offered no proof to demonstrate that the defendants knew anything about any requirements imposed upon them by either the FLSA or the NYLL.  Although the plaintiff testified that he complained to the defendants that he was not being properly paid, he did not explain what it was about his pay that he thought was improper.  This is not sufficient to demonstrate that the defendants knew they were violating federal or state law.  Accordingly, as this action was filed on February 7, 2014, the plaintiff may obtain recovery under the FLSA for damages accruing during the two-year period commencing on February 7, 2012.

3.      The statute of limitations for claims brought under the NYLL is six years.  N.Y. Lab. Law § 663(3).  The plaintiff may therefore obtain recovery under the NYLL for damages accruing from and after February 7, 2008.

4.      As to the plaintiff's claim for unpaid overtime wages, both the FLSA and the NYLL provide for recovery of unpaid overtime wages.  The FLSA provides that hours worked in excess of forty per week shall be compensated "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."  *See* 29 U.S.C. § 207(a).  Under regulations promulgated pursuant to the NYLL for employees in the hospitality industry, "[a]n employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.4; *see also* N.Y. Lab. Law § 199 (authorizing the commissioner of labor to issue regulations concerning payment of wages).  However, courts do not grant separate awards under both statutes, because doing so would allow the plaintiff to recover twice for the same loss.  *See, e.g., Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 n.44 (S.D.N.Y. 2008); *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998).  The court will thus rely on the statute that provides the greater recovery to the plaintiff in determining the damages to award for unpaid overtime wages.

5.      Although both the FLSA and the NYLL prescribe that overtime wages are to be paid at the rate of one and one-half times the regular rate of pay received by an employee, the

regulations promulgated pursuant to the two statutes differ with respect to the determination of the "regular rate of pay" when an employee receives a weekly salary as the plaintiff did here. Under FLSA regulations, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113 (2016); *see also* 29 C.F.R. § 778.325 (2016). "For purposes of FLSA, '[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours.'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002) (quoting *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). The presumption was rebutted here. The plaintiff's testimony establishes that when he was first hired he was told he would work from 8:00 a.m to 5:00 p.m., six days a week, for a total of 54 hours per week. The plaintiff was paid $650 when he completed his first week of work, and that base weekly salary remained unchanged throughout his employment.[2] From these facts, the court concludes that the plaintiff and the defendants had an understanding that the plaintiff's weekly salary was intended to compensate him for 54 hours of work per week. Dividing the plaintiff's salary of $650 per week by 54 hours, his regular rate of pay under the FLSA was thus $12.04 per hour. As explained in 29 C.F.R. § 778.325 (2016),[3] the plaintiff was thus entitled to an additional $6.02 per hour (half-time) for every hour worked in a week in excess of 40 hours up to 54 hours, and overtime pay at the rate of $18.06 per hour (time and one-half) for every hour he worked in a given week in excess of 54 hours.[4]

---

[2]Although the plaintiff's salary increased to $675 per week during the period from October through December when he worked more hours, and decreased to $600 per week during January when he worked fewer hours, his salary for the balance of the year remained at $650 per week throughout his employment with the defendants.

[3]This section of the Code of Federal Regulations explains, in pertinent part,

> If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and to statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55.

[4]The court recognizes that the regulations promulgated by the Department of Labor are not consistent and produce anomalous, and potentially unfair, results. Under 29 C.F.R. § 778.113, the regular hourly rate is computed by dividing the weekly salary by the number of hours the salary is intended to compensate. Where the number of hours intended to be compensated exceeds 40, however, 29 C.F.R. §

6.     By contrast, under new regulations promulgated for the hospitality industry under the NYLL that went into effect on January 1, 2011, for salaried employees "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2016).[5]  Under this formula, dividing the plaintiff's salary of $650 per week by 40 hours yields a regular hourly rate of $16.25.  Moreover, under the NYLL regulations, the plaintiff was entitled to receive an overtime rate of $24.38 for every hour he worked in excess of 40 hours per week.  Given the substantially higher overtime wage rates applicable under the NYLL for the entire period of time when recovery is available to the plaintiff under both the NYLL and the FLSA,[6] the court will calculate the plaintiff's recovery for unpaid overtime under the NYLL.

7.     Neither the plaintiff nor the defendants have provided the court with the NYLL regulations in effect prior to January 1, 2011 as they applied to salaries paid to employees in the plaintiff's line of work,[7] and the court has been unable to locate them through its own research. Some authorities hold that there is a rebuttable presumption that a weekly salary is meant to cover

---

778.325 prescribes that the regular hourly rate does *not* include any overtime premium and the employer is thus obligated to pay an additional overtime premium for each hour in excess of 40 hours over and above the weekly salary, notwithstanding that the weekly salary was intended to compensate the employee for the hours in excess of 40 hours.  Thus, even though the employer and employee both contemplate that the salary will pay the employee in full for the contemplated hours of work, the employer may still be held to have violated the FLSA by not paying an additional sum for the hours worked in excess of 40 hours.

[5]The hospitality industry regulations that became effective on January 1, 2011 now require that virtually all hospitality industry employees be paid on an hourly basis, and specifically prohibit employers from paying weekly salaries.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.5 (2016). Under the regulations, restaurants fall under the hospitality industry along with hotels, and the term "restaurant" is defined in part to include "any eating or drinking place that prepares and offers food or beverage for human consumption . . . on any of its premises . . . ."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1(b).  Although the plaintiff did not offer specific evidence that Luigi's Dolceria offered food for consumption on its premises, the court draws that reasonable inference from the evidence that pastries and cookies were among the products offered for sale and from the title of the business which connotes an establishment where desserts and other sweets are consumed.

[6]As noted earlier, the plaintiff may only recover for violations of the FLSA that occurred on and after February 7, 2012, well after the NYLL hospitality industry regulations went into effect.

[7]It appears that the plaintiff would have been covered by regulations that applied to restaurant workers which were repealed and replaced by the hospitality industry regulations.  The court has found no case suggesting that salaries were prohibited by the restaurant regulations in effect prior to 2011.

40 hours, which can be overcome by a showing of an agreement between the employer and employee that the salary covers a different number of hours. *E.g., Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048, 2007 WL 313483, at *23 (S.D.N.Y. Feb. 1, 2007) (citing *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). This is consistent with the view expressed in the FLSA provisions cited above concerning salaried employees, which are incorporated by reference in the NYLL regulations applicable to employees in industries other than the hospitality industry. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2016). The court thus will apply the FLSA standards in calculating the overtime wage requirements applicable under the NYLL for the period prior to January 1, 2011. Under those standards, as set forth above, the plaintiff's rate of pay for straight time is $12.04 per hour, and $18.06 per hour for overtime .

8. Using the formula for computing regular rate of pay under the NYLL for the period from January 1, 2011 through December 31, 2013, the plaintiff's regular hourly rate for the first 40 hours of work each week was $16.25, and the overtime rate was $24.38. In January of each of those three years, the plaintiff worked 45 hours per week, and should therefore have received $771.90 per week (40 x $16.25 plus 5 x $24.38). As he was only paid $600 per week during January, he was underpaid by $171.90 for each of the four weeks in January.[8] During the months from February through September, when the plaintiff testified that his regular workweek was 54 hours, he should have been paid $991.32 (40 x $16.25 plus 14 x $24.38). As he only received $650 per week during those months, he was underpaid by $341.32 per week for each of the 35 weeks in that period of time. Finally, for the months from October through December, when the plaintiff averaged 80 hours per week, he should have been paid $1,625.20 per week (40 x $16.25 plus 40 x $24.38). As he was only paid $675 per week during that period, he was underpaid by $950.20 per week in each of the 13 weeks in that period of time.

9. As explained above, for the period from February 7, 2008 to January 1, 2011 (when the current NYLL regulations were not in effect), the court calculates unpaid overtime using the rates provided under the FLSA formula, which are $12.04 per hour for straight time, and $18.06 per hour for overtime. Thus, in the month of January, where the plaintiff worked 45 hours per week, at the above rates the plaintiff was entitled to receive $571.90 per week (40 x $12.04 plus 5 x $18.06).

---

[8] For the sake of ease, the court will calculate damages by assigning four weekly pay periods for the month of January, thirty-five pay periods for the months from February through September, and thirteen pay periods for the months from October through December.

As he received $600 per week during January, he was not underpaid in that month. For the 35 weeks from February through September, when he worked 54 hours per week on average, he should have been paid $734.44 (40 x $12.04 plus 14 x $18.06). As he only received $650 per week, he was underpaid by $84.44 for each of those 35 weeks during the years from 2008 through 2010. Finally, for the 13 weeks from October through December, when he worked 80 hours per week on average, he should have been paid $1,204 per week, but was paid only $675 per week. As a result he was underpaid by $529 per week for those 13 weeks in each of the years from 2008 through 2010.

10. Based on the above computations, the court concludes that the plaintiff is entitled to recover a total of $104,371.96 for unpaid overtime during the period from February 2008 through December 31, 2013. A breakdown of that amount may be found in the Appendix to this opinion.

11. The plaintiff is also entitled to recover unpaid "spread of hours" compensation under the NYLL. "Spread of hours" under the NYLL "is the length of the interval between the beginning and end of an employee's workday." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (2016). Under the NYLL regulations now applicable to the hospitality industry, "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." *Id*. However, prior to January 1, 2011, the effective date of the regulations applicable to the hospitality industry, the "spread of hours" premium applied only to workers earning the minimum wage. *Seenaraine v. Securitas Sec. Services USA, Inc.*, 37 A.D.3d 700, 701-02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007); *Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007) *Chan v. Triple 8 Palace, Inc.*, 03 Civ. 6048, 2006 WL 851749, at *21 (S.D.N.Y. Mar. 30, 2006) (Lynch, D.J.); *Franklin v. Breton Int'l, Inc.*, No. 06 Civ. 4877, 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006); *see Ramos v. Telgian Corp.*, No. 14 CV 3422, 2016 WL 1306531, at *16 (E.D.N.Y. Mar. 31, 2016), *motion to certify appeal granted*, No. 14 CV 3422, 2016 WL 1959746 (E.D.N.Y. May 3, 2016); *but see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2005) (refusing to limit the "spread of hours" provision to only minimum wage employees). During the entire time he worked for the defendants, the plaintiff was paid well in excess of the minimum wage which, at its highest point during the plaintiff's employment, was $7.25 per hour. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1 (2016). Accordingly, the plaintiff was not entitled to "spread of hours" compensation prior to January 1, 2011.

12. During the months of October through December of each year, when the plaintiff worked seven days per week and averaged 80 hours of work per week, he necessarily worked more

than 10 hours per day. For the years 2011 through 2013, he is therefore entitled to an additional hour of pay at the minimum wage of $7.25 per hour for each of the 92 days in those months. The total recovery for "spread of hours" for each year is thus $667, yielding a total recovery of $2001 for that item of unpaid wages.

13. Under subsection 195(1) of the NYLL, as it read during the period from April 9, 2011 through February 26, 2015, the defendants were required to provide the plaintiff each year, by February 1, with a notice containing a whole array of information concerning his employment, including among other things, his rate of pay, the basis of his pay rate, his regular paydays, any allowances, as well as the full name and address of the employer. *See Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344, 2015 WL 2222438, at *30 (S.D.N.Y. Mar. 19, 2015). For violations of this requirement during that period of time, the plaintiff is entitled to recover $50 for each work week that the violations continue to occur up to a total of $2,500. *See id.* at *31. As the plaintiff was never provided with such a notice during the period from April 9, 2011 until his employment ended in January 2014, a period well in excess of 50 work weeks, the plaintiff is entitled to receive the maximum available award of $2,500.[9]

14. Under subsection 195(3) of the NYLL, as it has read since April 9, 2011, the defendants were required to give the plaintiff a statement with every payment of wages which detailed, among other things, "the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, . . . gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." For violations of this requirement during the period from April 9, 2011 until the plaintiff's termination in January 2014, the plaintiff is entitled to recover $100 for each work week that the violations continue to occur up to a total of $2,500. *See Kim v. Kum Gang, Inc.*, 2015 WL 2222438, at *31. As the plaintiff never received such notices with his weekly pay, he is entitled to receive the maximum available award of $2,500.

---

[9]As explained in detail in *Kim v. Kum Gang, Inc.*, the NYLL initially provided no judicial remedy to individual employees for violations of the notice requirements imposed by subsections 195(1) and 195(3). Amendments to the NYLL that became effective on April 9, 2011 provided the remedies addressed in this paragraph and in the ensuing paragraph of this opinion. Amendments that became effective February 27, 2015, after the plaintiff's employment had ended, have now increased the remedies. 2015 WL 2222438, at *31.

15.     The plaintiff is also entitled to recover liquidated damages under the NYLL for unpaid wages.  N.Y. Lab. Law § 198(1-a).  During the period for which the plaintiff is entitled to obtain recovery for unpaid wages, amendments to the NYLL were enacted which changed both the amount of, and the basis for, awards of liquidated damages.  Prior to November 24, 2009, a plaintiff could recover liquidated damages only upon proof of willfulness by the defendant.  That requirement was eliminated as of November 24, 2009, permitting employees to recover liquidated damages equal to 25% of unpaid wages unless the employer could prove a good faith basis for believing its underpayment complied with the law.  As of April 9, 2011, the liquidated damages award was increased to 100% of unpaid wages.

16.     There is a split of authority in this Circuit concerning cumulative recovery of liquidated damages under both the FLSA and the NYLL.  *See Gunawan v. Sake Sush Rest.,* No. 09-CV-5018, 2012 WL 4360754, at *9 (E.D.N.Y. Sept. 24, 2012) (comparing *Greathouse v. JHS Sec., Inc.,* No. 11 Civ. 7845, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) and *Wicaksono v. XYZ 48 Corp.,* No. 10 Civ. 3635, 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011).  The split appears to have stemmed in part from the differences in both the amount of and the basis for awarding liquidated damages that existed between the federal and the state statutes before the amendments to the NYLL that occurred in November of 2009 and April of 2011.  As a result, the recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery.  *E.g., Herrera v. Tri-State Kitchen & Bath, Inc.,* No. CV-14-1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (citing *Man Wei Shiu v. New Peking Taste Inc.,* 2014 WL 652355, at *18 (E.D.N.Y. Feb.19, 2014) and *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 381-82 (E.D.N.Y. 2013)); *accord, e.g., Garcia v. JonJon Deli Grocery Corp.,* No. 13-CIV.-8835, 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015); *Ramirez v. H.J.S. Car Wash Inc.,* No. CV-11-2664, 2013 WL 1437600, at *7 (E.D.N.Y. Apr. 9, 2013); *Villegas v. Monica Rest. Corp.,* No. CV-12-4131 VVP, 2013 WL 4046261, at *3 (E.D.N.Y. Aug. 8, 2013).  Continuing to follow that trend, I decline to provide cumulative liquidated damages under both statutes.

17.     As explained above, the plaintiff has not demonstrated willfulness on the part of the defendants, and therefore is not entitled to liquidated damages for unpaid wages prior to November

24, 2009.[10] By the same token, the defendants have not established a good faith basis for believing they were in compliance with the law on and after November 24, 2009, and the plaintiff is therefore entitled to liquidated damages for unpaid wages from that point forward. From November 24, 2009 to April 9, 2011, his unpaid overtime wages totaled $16,578.20, and he is therefore entitled to liquidated damages of $4,144.55, *i.e.*, 25% of his unpaid wages. From April 9, 2011 through the end of his employment as of January 1, 2014, his unpaid overtime wages totaled $70,858.40, and he is therefore entitled to a like amount in liquidated damages, *i.e.*, 100% of his unpaid wages. Finally, the plaintiff is also entitled to liquidated damages equal to 100% of his unpaid "spread of hours" wages during 2011 through 2013, which totals $2001. The grand total of the above amounts of liquidated damages comes to $77,003.95.

18. The NYLL also requires the court to award prejudgment interest on unpaid wages "as required under the civil practice law and rules." N.Y. Lab. Law § 198(1-a). The prejudgment interest rate under New York law is 9% per annum, N.Y. C.P.L.R. § 5004, and where, as here, damages are incurred at various times, the interest may be computed on all of the damages from a single reasonable intermediate date, *id.* § 5001(b). In choosing a reasonable intermediate date, the court notes that, as reflected in the attached appendix, almost half of the unpaid wages accrued in the years 2012 and 2013. Thus, the reasonable intermediate date from which interest will be computed is January 1, 2012. The total of unpaid overtime wages ($104,371.96) and unpaid "spread of hours" wages ($2001.00) is $106,372.96. From January 1, 2012 through May 17, 2016, prejudgment interest on that amount at 9% per annum comes to $41,913.86, and continues to accrue at the rate of $26.23 per day from May 17, 2016 to the date of judgment.

19. Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages. *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *9 (E.D.N.Y. Mar. 26, 2010); *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 313483, at *12 (S.D.N.Y. Feb. 1, 2007); *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3). The question of who is an "employer" within

---

[10]The Second Circuit has observed that the standard for establishing willfulness under the NYLL is essentially indistinguishable from that applicable under the FLSA. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)(citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005); *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (Lynch, J.).

the meaning of the FLSA and the NYLL depends on the "economic reality" of the employment relationship. *See, e.g., Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). A non-exclusive list of factors to be taken into account in answering the question include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield*, 537 F.3d at 142 (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)). However, when determining whether liability should be imposed on an individual within a company that is indisputably a plaintiff's employer, "courts apply the four-factor test articulated in *Carter* and also consider 'other factors bearing upon the overarching concern of whether the alleged employer possessed the power to control the workers in question.' " *Yu Y. Ho v. Sim Enterprises, Inc.*, No. 11 CIV. 2855, 2014 WL 1998237, at *11 (S.D.N.Y. May 14, 2014) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013)); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). In this regard, the principal focus is on "operational control," and the imposition of individual liability thus requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation – even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Irizarry*, 722 F.3d at 109.

20. Applying these principles, there is no question that the corporation, Luigi's Dolceria, Inc., was the plaintiff's employer throughout the time he was employed at Luigi's Dolceria. Through the two principals of Luigi's Dolceria the corporation controlled all aspects of the employment relationship, including all of the four *Carter* factors. The corporation is therefore liable for the entire amount the plaintiff is entitled to recover, which consists of $106,372.96 in unpaid overtime and "spread of hours" wages, $5,000 for the failure to provide wage and hour notices, $77,003.95 in liquidated damages, and prejudgment interest in the amount of $41,913.86.

21. However, the liability of the individual defendants – Luigi Di Rosa and Angelo Di Rosa – is different because their respective roles as the plaintiff's employer differed during the relevant time period. Up until he retired in July 2011, Luigi Di Rosa clearly exercised operational control over all aspects of the employment relationship, and he therefore qualifies as the plaintiff's employer for purposes of the FLSA and the NYLL until July 2011. After that point, however, he played a far less active role in the operation of the business, and gave up handling employment

matters. He thus ceased to be the plaintiff's employer at that point. The situation is reversed for Angelo Di Rosa. Prior to July 2011, the evidence at trial established that he had very little operational control over the employment relationship. As for the four *Carter* factors, he did not direct the activities of the plaintiff, did not set the plaintiffs hours or wages or other conditions of employment, he did not make the plaintiff's weekly payroll payments, and he did not maintain any employment records. The only aspect of the relationship in which he had any authority is that he had the power to fire the plaintiff, although he never did so. That all changed as of July 2011, when Luigi Di Rosa retired and turned over control to Angelo. But until that point, Angelo did not serve as the plaintiff's employer. Accordingly, the court concludes that Angelo Di Rosa became the plaintiff's employer as of July 2011 and remained in that capacity until the employment ended in January 2014.[11]

22. Through June 30, 2011 when he was the plaintiff's employer, Luigi Di Rosa incurred liability for $37,609.40 in unpaid overtime wages, $600 for failing to provide weekly wage and hour notices,[12] and $8,240.39 in liquidated damages. For the remainder of the plaintiff's employment when Angelo Di Rosa was his employer, Angelo Di Rosa incurred liability for $68,763.56 in unpaid overtime and "spread of hour" wages, $4,400 for failing to provide weekly and annual wage and hour notices, and $68,763.56 in liquidated damages. As for prejudgment interest, although Luigi Di Rosa is only responsible for approximately one-third of the unpaid wages, because his portion of the wages have been accruing interest longer than the portion attributable to Angelo Di Rosa, to avoid

---

[11]The court is cognizant that the Joint Pretrial Order contains a stipulation that Angelo Di Rosa was the plaintiff's employer. However, the stipulation does not state that Angelo Di Rosa was the plaintiff's employer throughout the employment relationship. The issue has significant consequences for the individual defendants. The stipulation should therefore be read narrowly, particularly since the individual defendants were not represented by counsel and were clearly unschooled in the law, while the plaintiff was represented by able counsel who drafted the pretrial order and therefore was in a position to be specific about this issue. Accordingly, the court reads the stipulation giving careful consideration to the evidence offered at trial concerning the individual defendants' respective roles in the operation of the business. It should be noted that virtually all of the evidence concerning the shifting roles of the two individual defendants concerning operational matters came from the plaintiff himself.

[12]Between April 9, 2011, when liability was first imposed on employers for failing to provide weekly wage and hour notices, and July 1, 2011, Luigi Di Rosa failed to provide 12 such notices. As the first annual wage and hour notice was not required to be provided until February 2012, Luigi Di Rosa incurred no liability for failing to provide such notices.

complex monthly calculations, I conclude that they should each be held liable for one-half of the total of prejudgment interest that is awarded.

## CONCLUSION

For the foregoing reasons, the plaintiff is entitled to recover $106,372.96 in unpaid wages, $5,000 for the defendants' failure to provide wage and hour notices, $77,003.95 in liquidated damages, and prejudgment interest in the amount of $41,913.86. The defendant Luigi's Dolceria, Inc. is liable for the total amount of $230,290.77 plus $26.23 per day from May 17, 2016 to the date of judgment. Of that total amount, the defendant Luigi Di Rosa is jointly and severally with Luigi's Dolceria, Inc., for $67,406.72 plus $13.11 per day from May 17, 2016 to the date of judgment, and the defendant Angelo Di Rosa is jointly and severally liable with Luigi's Dolceria, Inc. for $162,884.05 plus $13.12 per day from May 17, 2016 to the date of judgment. The clerk is directed to enter judgment accordingly.

                                                                     **SO ORDERED:**

                                                    *Viktor V. Pohorelsky*
                                                    VIKTOR V. POHORELSKY
                                                    United States Magistrate Judge

Dated:    Brooklyn, New York
              May 17, 2016

# APPENDIX

### UNPAID OVERTIME WAGES BY MONTH AND YEAR

|  | **2008**[11] | **2009** | **2010** | **2011** | **2012** | **2013** |
|---|---|---|---|---|---|---|
| January |  |  |  | $687.60 | $687.60 | $687.60 |
| February through September | $2,870.96 | $2,995.40 | $2,995.40 | $11,946.20 | $11,946.20 | $11,946.20 |
| October through December | $6,877.00 | $6,877.00 | $6,877.00 | $12,352.60 | $12,352.60 | $12,352.60 |
| **TOTALS:** | **$9,747.96** | **$9,832.40** | **$9,832.40** | **$24,986.40** | **$24,986.40** | **$24,986.40** |

**GRAND TOTAL:** $104,371.96

### UNPAID "SPREAD OF HOURS" WAGES BY MONTH AND YEAR

|  | **2008** | **2009** | **2010** | **2011** | **2012** | **2013** |
|---|---|---|---|---|---|---|
| January |  |  |  |  |  |  |
| February through September |  |  |  |  |  |  |
| October through December |  |  |  | $667.00 | $667.00 | $667.00 |
| **TOTALS:** |  |  |  | **$667.00** | **$667.00** | **$667.00** |

**GRAND TOTAL:** $2,001.00

---

[11]Because of the statute of limitations, the plaintiff's recovery for unpaid overtime in 2008 begins to accrue on February 7.